UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SIDNEY C. MCKINNEY,

                Plaintiff,

v.

L. SMITH et al.,

                Defendants.

_____/

Case No. 1:18-cv-603

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).   The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

### Discussion

### I.      Factual allegations

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan.  The events about which he complains, however, occurred at the West Shoreline Correctional Facility

(MTF) in Muskegon Heights, Muskegon County, Michigan. Plaintiff sues MTF Security Threat Group (STG)[1] Coordinator Sergeant L. Smith; MTF Warden Shane Jackson; MTF Inspector Dale Myers; MTF Grievance Coordinator James Kitchen; MDOC Central STG Office Supervisors Brent Travelbee and Larry Brown; and MDOC Director Heidi E. Washington.

Although Plaintiff's complaint is lengthy, it contains only meager descriptions of the facts on which he bases his claims. Instead, it largely consists of repetitious legal conclusions that Defendant Smith and other Defendants acted with long lists of mental states (intentionally, maliciously, corruptly, tortiously, callously, recklessly, discriminatorily and deliberately) to commit constitutional violations, without specific factual underpinnings. (*See, e.g.*, Compl., EFC No. 1 PageID.3-5, 8, 10, 12-14, 16-19, 21-23, 25-27, 29.) Nevertheless, from a review of the complaint in conjunction with the attachments, it appears that, on February 10, 2016, Defendant Smith completed a STG-II member identification form, indicating that Plaintiff was an inactive STG-II member who had demonstrated new activity. (*Id*., PageID.3-4; Ex. A to Compl., ECF No. 1-1, PageID.37-38.) Plaintiff contends that Defendant Smith "falsified" various parts of the form, most particularly by checking box number 16 on the form, which indicated that Plaintiff "is identified as a leader, enforcer, recruiter in a Security Threat Group," thereby elevating Plaintiff's classification to STG II. (*Id.*, PageID.38.)

On February 22, 2016, Correctional Officer Plesgo issued a Class-III misconduct charge against Plaintiff for being an accessory to possession of contraband by prisoner Gibson. The misconduct ticket charged that, during a search of prisoner Gibson's papers, Plesgo found

---

[1] Under MDOC Policy Directive 04.04.113 (eff. Feb. 26, 2015), a "STG is a group of prisoners designated by the Director as possessing common characteristics which distinguish themselves from other prisoners or groups of prisoners and which, as an entity, pose a threat to staff or other prisoners or to the custody, safety and security of the facility." *Id.* ¶ B. An STG-I member is defined as "[a]n offender who has been verified and designated through gathered intelligence, information and/or activity to be an active member of a STG." *Id.* ¶ C. STG-II offenders are "STG members who pose a greater threat to the safety and security of the facility and/or public. These members have been identified as holding a position of influence, enforcer or recruiter of a STG." *Id.* ¶ D.

"Renew My Vows" papers signed by Gibson and witnessed by Plaintiff, purporting to renew Gibson's vows as a member of the Melanic Islamic Palace of the Rising Sun (Melanics), a designated STG. (Misconduct Report, ECF No. 1-1, PageID.39.) Defendant Smith reviewed Plaintiff on the misconduct charge on February 23, 2016. On February 29, 2016, Defendant Smith told Plaintiff to return to his cell and retrieve the Class-III misconduct issued on February 22, 2016, because Defendant Smith intended to pull the misconduct charge. Plaintiff told Smith that he did not have the misconduct report, as he had mailed it to his family for safekeeping. Defendant Smith apparently did not believe Plaintiff and threatened him with two misconduct charges (disobeying a direct order and interference with the administration of rules) if Plaintiff did not return the form. When Plaintiff returned to his cell, he was informed that the cell had just been searched on Smith's orders.

On March 3, 2016, Plaintiff signed a renunciation of his membership in the Melanics. On March 14, 2016, Defendant Travelbee approved Plaintiff's designation as an STG-II member. The following day, March 15, 2016, Plaintiff filed a Step-I grievance,[2] alleging that he had signed off from the Melanics in 2002, signed off again on March 3, 2016, and had nothing to do with the Melanics. In his grievance, Plaintiff also complained that he had been deprived of his due process rights when Defendant Smith completed the STG form on February 10, 2016, stating that Melanic material with Plaintiff's name on it was found in another prisoner's possession and that the misconduct ticket was not written until February 22, 2016, twelve days after Defendant

---

[2] MDOC Policy Directive 03.02.130 (eff. July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control  *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ P, V. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  *Id.* at ¶¶ T, BB. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ T, FF.

Smith completed the form. (Step-I grievance form, ECF No. 1-1, PageID.42.) On investigation, Defendant Inspector Myers reported to Defendant Grievance Coordinator Kitchen Plaintiff's claim that he was not involved with the Melanics was inconsistent with witness accounts of Gibson's renewal of vows, as well as other "observed, reported or suspect activity." (Mem., ECF No. 1-1, PageID.44.) The Defendant Myers therefore found that Plaintiff had been properly returned to STG-II classification. Defendant Myers also wrote that, according to the records, Plaintiff had signed off on the Melanics in October of 2015, not in 2002, as Plaintiff represented. (*Id.*) Defendant Myers rejected Plaintiff's grievance, referencing and attaching his memorandum. (Step-I Grievance, ECF No. 1-1, PageID.42.) Plaintiff appealed to both Step II and Step III of the grievance process. The Step-I response was affirmed at both appeal levels, on June 23, 2016, and October 27, 2016, by Defendant Warden Jackson and Richard Russell, respectively. (ECF No. 1-1, PageID.45-49.)

On March 29, 2018, during his annual security classification screening, Plaintiff's confinement level was set at Level V,[3] as a result of his STG-II classification. However, the screener found Plaintiff's true security level to be Level IV, where Plaintiff subsequently was placed. As a result of his STG-II classification, Plaintiff cannot work a prison job and is permitted only one hour per day of out-of-cell movement, including morning yard time. In addition, he is not permitted to receive SecurePak, cannot send J-Pay messages, and is limited to five telephone calls per week, excluding attorney calls. Plaintiff also complains that, as an STG-II prisoner, he is entitled to have only two non-contact visits per month. Because of his STG-II classification,

---

[3] In the MDOC, security classifications, from least to most secure, are as follows: Levels I, II, IV, V, and administrative segregation. MDOC Policy Directive 05.01.130 ¶ B (eff. Oct. 10, 2011). There are two types of segregation: administrative segregation and punitive segregation. MDOC Policy Directive 04.05.120 ¶¶ L, U (Sept. 27, 2010). Administrative segregation is the most restrictive and is imposed for institutional security, *e.g.*, when a prisoner poses a serious escape risk. *Id.* ¶ L. Detention, or "punitive segregation," can be imposed as a sanction for committing a major misconduct, if ordered by the hearing officer. *Id.* ¶ U.

Plaintiff was ineligible to attend his birth father's funeral on August 9, 2016. *See* MDOC Policy Directive 04.04.140 (governing approvals of escorted funeral and sick bed visits for prisoners whose true security level is I, II, or III) (eff. Nov. 1, 2002).

Plaintiff alleges that, in February and March of 2018, he sent descriptions of his alleged mistreatment to Defendants Brown, Travelbee, and Washington, but they took no action to rectify the problem, though Brown and Travelbee informed Plaintiff that the actions were correct and that he should stop submitting complaints about it. Plaintiff therefore contends that they and all of the supervisory defendants have implicitly authorized the allegedly unconstitutional actions of Defendant Smith to have Plaintiff placed in STG-II status.

Plaintiff alleges that Defendants denied him his Fourteenth Amendment rights to due process and equal protection by improperly classifying him to STG-II. In addition, Plaintiff contends that Defendant Smith coerced him into signing and dating the MDOC Security Threat Group Renunciation/Removal form on March 3, 2016, in violation of his rights under the Fifth Amendment, because Smith failed to attach a statement to the form indicating that Plaintiff was not an active member of any STG, an attachment requested by Plaintiff. Plaintiff also contends that his classification to STG-II has subjected him to conditions of confinement that amount to cruel and unusual punishment under the Eighth Amendment. Further, Plaintiff contends that Defendant Smith retaliated against him, in violation of the First Amendment, and violated the Eighth Amendment by having Plaintiff transferred to a Level-IV prison located 410 miles farther away from his four-year-old son and the rest of his family. Plaintiff argues that 14 of the 16 Level-IV prisons are located downstate, closer to Plaintiff's family, and that he easily could have been transferred to one of these 14 prisons.

Plaintiff seeks injunctive relief, together with nominal, compensatory, and punitive damages.

## II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Supervisory Liability

Plaintiff fails to make specific factual allegations against Warden Jackson, Inspector Myers, Grievance Coordinator Kitchen, Central Office STG Coordinator Brown, and MDOC Director Washington, other than that they failed to correct the actions of Defendant Smith, failed conduct an investigation in response to his grievances and letters of complaint, or failed to supervise their subordinates. In addition, Plaintiff alleges that, other than approving the STG-II classification, Defendant Travelbee is liable in this action solely for failing to respond to Plaintiff's grievances and letters and failing to supervise.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th

Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Jackson, Myers, Kitchen, Brown, and Washington engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them. In addition, Plaintiff fails to state a claim against Defendant Travelbee for failing to supervise and failing to respond to Plaintiff's grievances and complaints.

### B. Due Process

Plaintiff alleges that Defendant Smith took action recommending Plaintiff's classification to STG-II for false reasons, given that the misconduct ticket for Plaintiff's signing as a witness for Gibson's renewal of vows was not issued until 12 days after Smith made the recommendation. Plaintiff alleges that Defendant Travelbee violated Plaintiff's right to due process by approving Defendant Smith's actions and designating Plaintiff to STG II.

The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id; see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, plaintiff cannot successfully

claim that his due process rights were violated because, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

The Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (holding that "'an increase in security classification, such as being classified as a[n] STG member,' does not constitute an 'atypical and significant' hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification.") (citing *Moody*, 429 U.S. at 88); *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that prisoner had no constitutional right to be held in a particular prison or security classification); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). Plaintiff's designation as a "Security Threat Group Member" is nothing more than a security classification used by the prison. Because Plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a due process claim.

### C.     Equal Protection

Plaintiff contends that Defendant Smith subjected him to racial discrimination, in violation of the Equal Protection Clause. In support of his claim, Plaintiff states that Defendant

Smith has a "strong 'HATRED' towards all African-Americans/ or Latino-American[]s to cause him (Sgt. L. Smith) to act like a common criminal . . . ."  (Compl., ECF No. 1, PageID.21.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest."  *City of Cleburne*, 473 U.S. at 440.  However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ."  *Price v. Johnston*, 334 U.S. 266, 285 (1948).  "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him.  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).  Such discriminatory purpose must be a motivating factor in the actions of the defendants.  *Id.* at 265-66.  "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011).

Plaintiff alleges no *facts* constituting direct evidence of discriminatory motive or purpose in Defendant Smith's actions. *See Umani*, 432 F. App'x at 458. Instead, he relies upon a wholly conclusory statement about Smith's views of African-Americans and Latino-Americans. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Moreover, Plaintiff fails to allege a prima facie claim under the indirect, burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of discrimination under the *McDonnell Douglas* test, a plaintiff must show that (1) he was a member of a protected class; (2) he was qualified for favorable treatment; (3) he was subjected to an adverse decision; and (4) he was treated differently than similarly situated non-protected individuals. *See Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008) (internal quotations omitted). To be a similarly situated member of another class, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani*, 432 F. App'x at 460 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)); *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 586 (6th Cir. 1992). Plaintiff makes no allegation that any similarly situated prisoner was treated differently under substantially the same circumstances.

Plaintiff's conclusory equal protection claim therefore will be dismissed for failure to state a claim.

### D.    Self-Incrimination

Plaintiff next asserts that Defendant Smith coerced Plaintiff into signing a renunciation of the Melanics.  Plaintiff contends that he wanted Defendant Smith to attach a statement indicating that Plaintiff was not an active member of the group, apparently believing that the renunciation effectively admitted that he had been such a member.  Plaintiff contends that, by failing to attach the requested statement, Defendant Smith violated his Fifth Amendment rights by coercing him to be a witness against himself

The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. am. V.  The "Amendment speaks of compulsion," *United States v. Monia*, 317 U.S. 424, 427 (1943), and the Court has insisted that the "constitutional guarantee is only that the witness not be compelled to give self-incriminating testimony." *United States v. Washington*, 431 U.S. 181, 188 (1977).  While "the privilege against self-incrimination does not terminate at the jailhouse door, [] the fact of a valid conviction and the ensuing restrictions on liberty are essential to the Fifth Amendment analysis." *McKune v. Lile*, 536 U.S. 24, 36 (2002) (citing *Sandin*, 515 U.S. at 485. In *Lile*, the Supreme Court rejected a prisoner's claim that Ohio's sex-offender treatment program, which required prisoners to accept responsibility for their past sex offenses, violated the privilege against self-incrimination, despite the fact that the prisoner faced transfer to a higher level of confinement and loss of privileges if he failed to admit responsibility.  The Supreme Court held that the exercise of the right against self-incrimination need not be without consequences:

> The "criminal process, like the rest of the legal system, is replete with situations requiring the making of difficult judgments as to which course to follow.  Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." *McGautha v. California*, 402 U.S. 183, 213 (1971) (citation and internal quotation marks omitted).  It is well settled that the

> government need not make the exercise of the Fifth Amendment privilege cost free. *See, e.g., Jenkins v. Anderson*, 447 U.S. 231, 238 (1980) (a criminal defendant's exercise of his Fifth Amendment privilege prior to arrest may be used to impeach his credibility at trial); *Williams v. Florida*, 399 U.S. 78, 84-85 (1970) (a criminal defendant may be compelled to disclose the substance of an alibi defense prior to trial or be barred from asserting it).

*Id.* at 40-41. Similarly, the Supreme Court has recognized that, in the context of prison misconduct proceedings, the privilege against self-incrimination does not prevent an accused prisoner's silence from being treated as an admission of guilt. *Baxter v. Palmigiano*, 425 U.S. 308, 317-18 (1976) (citing *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)). The Supreme Court also has recognized that a state clemency procedure that offers a prisoner the opportunity to participate in a clemency interview does not violate the Fifth Amendment's privilege against self-incrimination if it does not offer immunity for disclosures during the interview. *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 287-88 (1998).

In the instant case, as in *Lile*, Plaintiff was faced with a choice between attempting to reduce the chance of his classification to STG-II by renouncing the Melanics and risking tacitly admitting in that renunciation that he had been associated with the Melanics previously. Nothing about that choice was unconstitutionally coercive. *Lile*, 536 U.S. at 40-41. Moreover, Plaintiff does not even attempt to allege that Defendant Smith participated in active coercive conduct. *See Mincey v. Arizona*, 437 U.S. 385 (1978) (requiring that the conduct of law enforcement officials overbear the will of the accused); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973). Instead, Plaintiff argues no more than that he felt like he faced a coercive choice. A suspect's state of mind, standing alone, cannot render a statement involuntary. Rather, coercive police conduct is a necessary prerequisite to the conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession. *See Colorado v. Connelly*, 479 U.S. 157, 163-67 (1986).

Plaintiff's complaint contains no allegation that Defendant Smith engaged in brutality or threats of coercion; indeed, the complaint is devoid of allegations that Smith in any way encouraged Plaintiff to sign the renunciation form. Instead, Smith simply refused to attach a statement to Plaintiff's completed form that Plaintiff wished to have attached. Under the facts alleged, Plaintiff fails to state a Fifth Amendment violation.

### E. Eighth Amendment

Plaintiff alleges that Defendant Smith's actions, in conjunction with the approval or acquiescence of the other Defendants, violated his rights under the Eighth Amendment. Plaintiff suggests that the restrictions on his privileges as an STG-II prisoner – including limitations on phone calls, visits, out-of-cell activities, and the opportunity to be approved for an escorted funeral visit – amounted to cruel and unusual punishment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

The Supreme Court has held that placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. 337, 347 (1981)); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). In the instant case, Plaintiff was assigned to Level-IV confinement, two steps below segregation, which is the most serious level of confinement within the MDOC. Although it is clear that Plaintiff was denied certain privileges as a result of his reclassification to Level IV as an STG-II prisoner, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Certainly, the inability of an incarcerated person to attend a funeral outside the prison does not violate the Eighth Amendment. Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U.S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants.

### F.     Retaliation

Plaintiff alleges that Defendant Smith retaliated against him, in violation of the First Amendment, by transferring him to LMF in Munising, Michigan, 410 miles further away from his son and family members. Although Plaintiff's complaint is not entirely clear, it appears that he alleges that the transfer to LMF was retaliatory, because it did not happen until 42 days after Smith completed the Security Threat Group Member Identification form recommending Plaintiff for

classification to the STG-II designation.  In the meantime, on March 16, 2016, Plaintiff filed a grievance against Smith for his February 10, 2016, conduct.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).  "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  While temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive'" under appropriate circumstances, *see Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), "[c]onclusory

allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004) (holding that, without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendant Smith retaliated against him because he filed a grievance. Indeed, because Plaintiff already had been designated to STG-II and found guilty of a misconduct charge before he filed his grievance, those actions constituted a far more plausible explanation for the transfer than any unsupported suspicion of retaliation. *Iqbal*, 556 U.S. at 678 (requiring plausibility). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2). Accordingly, Plaintiff's conclusory allegations fail to state a retaliation claim.

### G. Motion to Appoint Counsel

Plaintiff has filed a motion seeking a court-appointed attorney (ECF No. 3). Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989). Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606.

Because Plaintiff's allegations fail to state a claim, Plaintiff's request for appointment of counsel (ECF No. 3) is moot. The motion therefore will be **DENIED**.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An Order and Judgment consistent with this Opinion will be entered.


Dated:      June 29, 2018             /s/ Robert J. Jonker
                                     ROBERT J. JONKER
                                     CHIEF UNITED STATES DISTRICT JUDGE